LESLIE H. BEN-ZVI, ESQ. (LB-8639)
Attorney  for Plaintiffs
233 Broadway - 18th Floor
New York, New York 10279
(212) 719-5300 / 666-6656

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

ROBERT H. STEIN and TSIMMES MUSIC,                    **COMPLAINT**

                                    Plaintiffs,

                - against -
                                                      06 CV 2711

dLIFE, A LIFEMED MARKETING COMPANY;
BIRTHDAY BUDDIES PRODUCTIONS; TRIPLE                   (JES) (DF)
THREAT TV; HOWARD STEINBERG; GARY
COHEN, ERIK SORENSON, CNBC, DIRECTV,                   **TRIAL BY JURY IS**
COLOURS TV, DISH NETWORK and                          **HEREBY DEMANDED**
ECHOSTAR SATELLITE LLC,

                                    Defendants.

-------------------------------------------------------------------------x

        Plaintiffs, by their attorney, LESLIE H. BEN-ZVI, ESQ., as and for their Complaint,

allege as follows:

### INTRODUCTION

        1.      This case involves the infringement by all Defendants herein of certain musical

compositions which are included in and are a part of Plaintiffs' copyrighted "dLife Collection"

and certain musical compositions and songs which are included in and are a part of Plaintiffs'

copyrighted "New Joke City Collection" (collectively, "the Compositions").  Defendants

misappropriated the Compositions for their own use and profit by embodying portions thereof in

not less than thirteen episodes of the cable television show "dLife*"* ("the Infringing Work").

Defendants, without limitation, performed, broadcast, duplicated, manufactured, reproduced,

distributed and sold the Infringing Work for profit without consent of any kind from Plaintiffs.

Defendants have and shall continue to reap profit from the Infringing Work, which profit they are not entitled to but which should belong to Plaintiffs whose Compositions were in effect pirated by Defendants.

2.     This case also involves a breach of contract by Defendants Birthday Buddies Productions, Triple Threat TV, Howard Steinberg, Gary Cohen and Erik Sorenson due to their failure to pay Plaintiff Stein (i) the $35,000.00 balance due out of $65,000.00 for producing thirteen episodes of the cable television show "dLife" (the "Infringing Work"), (ii) $3,000.00 for the use of the Compositions in said thirteen episodes of "dLife" (the "Infringing Work") and (iii) additional fees for editing episodes of the "dLife" (the "Infringing Work").

3.     Plaintiffs seek damages arising from (i) the Copyright Act, (ii) the Lanham Act, (iii) breach of contract, (iv) promissory estoppel, (v) conversion, (vi) misappropriation (vii) accounting, (viii) injunction and (ix) false advertising and labeling.

## JURISDICTION AND VENUE

4.     This is an action, *inter alia,* for copyright infringement under 17 U.S.C. §101 et seq., palming off under the Lanham Act, breach of contract, injunction, accounting, conversion, misappropriation and false labeling.  Pursuant to 28 U.S.C. §1331 and §1338, this Court has original, exclusive and pendant jurisdiction over all claims herein.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) and (c) and §1400(a). Plaintiff has and/or currently maintains his offices for the conduct of business in this District and the infringement of Plaintiff's copyrights have and/or continue to occur in this District within the meaning of 28 U.S.C. §1391(b).

## PARTIES

6.     Plaintiff Robert H. Stein ("Stein") is a resident of New York, New York and is the composer of the aforesaid Compositions.

7.     Plaintiff Tsimmes Music is the d/b/a business entity of Plaintiff Stein.

8.     Defendant dLife, A LifeMed Marketing Company (hereinafter "dLife") is, upon information and belief, a Connecticut corporation which maintains offices at 15 Ketchum Street, Westport, CT 06880.

9.     Defendant Birthday Buddies Productions (hereinafter "Birthday Buddies") is, upon information and belief, a New York corporation and/or other business entity which maintains offices at 417 W. 126th Street, 3rd Floor, New York, NY 10027 and at 237 West Mt. Airy Road, Croton-On-Hudson, NY 10520.

10.     Defendant Triple Threat TV (hereinafter "Triple Threat") is, upon information and belief, a New York corporation  and/or other business entity which maintains offices at 417 W. 126th Street, 3rd Floor, New York, NY 10027.

11.     Defendant Howard Steinberg (hereinafter "Steinberg") is the CEO/Founder of Defendant dLife, A LifeMed Marketing Company and  maintains offices at 15 Ketchum Street, Westport, CT 06880.

12.     Defendant Gary Cohen (hereinafter "Cohen") is a principal of Defendant Birthday Buddies,  a principal of Defendant Triple Threat TV, an Executive Producer of dLife TV and resides at 237 West Mt. Airy Road, Croton-On-Hudson, NY 10520.

13.     Defendant Erik Sorenson (hereinafter "Sorenson") is a principal of Defendant Birthday Buddies, a principal of Defendant Triple Threat TV and an Executive Producer of dLife TV.

14.     Defendant CNBC is, upon information and belief, a New York or New Jersey corporation  and/or other business entity which maintains offices in Englewood, New Jersey, which conducts business in New York State and which has been and is currently performing, broadcasting, duplicating, manufacturing, reproducing, distributing and using the Compositions,

as hereafter defined.

15.    Defendant DirecTV, Inc. is, upon information and belief, a foreign corporation and/or other business entity which conducts business in New York State and which has been and is currently performing, broadcasting, duplicating, manufacturing, reproducing, distributing and using the Compositions, as hereafter defined.

16.    Defendant Colours TV is, upon information and belief, a foreign corporation and/or other business entity which conducts business in New York State and which has been and is currently performing, broadcasting, duplicating, manufacturing, reproducing, distributing and using the Compositions, as hereafter defined.

17.    Defendant DISH Network is, upon information and belief, a foreign corporation and/or other business entity which conducts business in New York State and which has been and is currently broadcasting the Compositions, as hereafter defined.

18.    Defendant Echostar Satellite LLC is, upon information and belief, a foreign limited liability company and/or other business entity which conducts business in New York State and which has been and is currently broadcasting the Compositions, as hereafter defined.

## FACTUAL BACKGROUND

19.    In May 2004, Plaintiff Stein was hired by Defendant Cohen, with the express knowledge and approval of Richard Glosser, the Executive Vice President of Defendant dLife, to write and produce five "Dr. Bob Arnot" radio spots for Defendant dLife and was paid $1,000.00 therefore by Defendant dLife.

20.    Upon information and belief, in or about 2004, Defendants Cohen and Sorenson created Defendant Birthday Buddies for the purpose of producing a pilot for a half-hour talk show about diabetes for Defendant dLife.

21.    In August 2004, Plaintiff Stein was hired by Defendants Birthday Buddies, Triple Threat TV, Cohen and Sorenson for the sum of $7,500.00 to produce the aforesaid pilot for Defendant dLife.

22.    In conjunction therewith, Plaintiff Stein conducted casting interviews in New York and Los Angeles, prepared budgets, wrote scripts, hired personnel, managed the production studio, oversaw the floor production and oversaw an entire array of pre-production and production responsibilities.

23.    Although Plaintiff Stein was not hired by said Defendants to be involved in post-production, *i.e.*, editing, Plaintiff Stein was subsequently required to revise and complete the editing which Defendant Cohen failed to finish when he left the United States to travel to Germany.

24.    Following the December 2004 completion and delivery of the pilot, Defendant dLife notified Defendants Birthday Buddies, Triple Threat TV, Cohen and Sorenson that based upon the pilot, it was ordering thirteen shows to air on CNBC at 7:00 pm on Sunday nights beginning March 20, 2005.

25.    Plaintiff Stein was immediately hired by Defendants Birthday Buddies, Triple Threat TV, Cohen and Sorenson to produce all thirteen shows for a fee of $65,000.00 with the following provisos: (i) because of Plaintiff Stein's other professional commitments, *i.e.*, particularly tour dates with comedian Robert Klein, Plaintiff Stein would have flexibility as to his hours, office work days and general production schedule, etc.; (ii) Defendant Cohen would be responsible for all 'client relations' with Defendant dLife.

26.    Defendants dLife decided that the thirteen shows would be shot in two blocks: six shows in February 2005 followed by the remaining seven shows in April or May 2005.

27.     For approximately two months in late 2004 / early 2005, Plaintiff Stein engaged in the following pre-production activities regarding all thirteen shows: creation of budgets, research of story ideas, negotiation and booking of the production studio, hiring of staff, booking of celebrity and other guests, supervision of the set design, writing of scripts, composition of music, general management of every aspect of pre-production.

28.     Actual production commenced with the load-in on or about February 11, 2005, followed by set-up and rehearsals on or about February 14th and 15th, 2005, followed by the taping of the first six shows between February 16, 2005 and February 18, 2005.

29.     In or about February - March 2005, Plaintiff Stein engaged in the following pre-production activities regarding the remaining seven shows: creation of budgets, additional research of story ideas, booking of the production studio, overseeing the continued availability of staff, preliminary booking of celebrity and other guests, writing of scripts, composition of music, general management of every aspect of pre-production.

30.     Although Plaintiff Stein's contract with Defendants Birthday Buddies, Triple Threat TV, Cohen and Sorenson did not obligate Plaintiff Stein to be involved in any post-production, *i.e.*, editing, while Plaintiff Stein was engaged in pre-production for the remaining seven shows, said Defendants asked Plaintiff Stein to complete the editing of the first six shows that Defendant Cohen failed to finish when he left the United States to travel to Ireland.

31.     Plaintiff Stein was thereafter required to travel to New York from Florida at his own expense to edit the first six shows, a process which was ultimately completed five weeks later and which interfered with his pre-production for the remaining seven shows.

32.     Plaintiff Stein was paid no additional money for the post-production editing he performed on behalf of Defendants Birthday Buddies, Triple Threat TV, Cohen and Sorenson.

33.     As a result thereof, when the first of the thirteen shows was delivered to CNBC, it was rejected because of technical and content issues and needed to be re-edited at least three times.

34.     On or about March 20, 2005, the first show aired on CNBC and posted very good ratings.

35.     In or about March 2005, Plaintiff Stein advised Defendants  Birthday Buddies, Triple Threat TV, Cohen and Sorenson of several changes to Plaintiff Stein's schedule regarding the remaining seven shows.  Such changes and flexibility had been specifically contemplated by Plaintiff Stein's contract with said Defendants, concerned pre-production days only and did not conflict with any load-in, rehearsal, or shoot days.  Nonetheless, Plaintiff Stein cut short a business trip to Los Angeles to accommodate the schedule of said Defendants.

36.     In or about March 2005,  Defendant Cohen advised Plaintiff Stein of the following: (i) that although the contract did not require Plaintiff Stein to engage in any client relations, he now wanted Plaintiff Stein to assume said role at no additional remuneration in place of Defendant Cohen.; (ii) that although the contract specifically contemplated flexibility in Plaintiff Stein's schedule and did not require Plaintiff Stein to 'punch a time clock' Plaintiff Stein would be required to come into the production office early in the day; (iii) that Plaintiff Stein's remuneration be reduced coupled with a pledge that Plaintiff Stein not be responsible for any post-production work – although Plaintiff Stein's initial engagement by said Defendants never contemplated post-production work to begin with.

37.     Defendant Cohen thereafter told Plaintiff Stein that he would only pay Plaintiff Stein $7,500.00 of the remaining $35,000.00 which was owed to him at the time – and would only do so if Plaintiff Stein remained available to consult with Defendants for another ten days.

38.    In or about March 2005, Defendant Cohen told Plaintiff Stein that he had fired the director of the show, that he had hired another producer to replace Plaintiff Stein and that he would pay Plaintiff Stein the aforementioned $7,500.00 to "walk away."

39.    Plaintiff Stein advised Defendant Cohen that Plaintiff Stein  had fulfilled the contract with  Defendants Birthday Buddies, Triple Threat TV, Cohen and Sorenson  and was ready, willing and able to abide by its terms and conditions which required Defendants Birthday Buddies, Triple Threat TV, Cohen and Sorenson to pay Plaintiff Stein $65,000.00 to produce said thirteen shows.

40.    Although Plaintiff Stein had been replaced as producer, was still owed $35,000.00 for producing the shows, was still owed $3,000.00 for use of the Compositions and had not been paid for editing the shows, Plaintiff Stein nevertheless continued to edit the remainder of the first six shows.

41.    Several days later, Defendant Cohen approached Plaintiff Stein again and asked Plaintiff Stein to remain as the producer, to officially serve as a writer and to accept less money than had been contractually agreed by said parties.  Plaintiff Stein refused.

42.    On or about April 13, 2005, Plaintiff Stein advised Defendant Cohen that not only was Plaintiff Stein owed the balance of $35,000,00, Plaintiff Stein was still owed $3,000.00 for use of the Compositions and had not been paid for editing the shows.

43.    Plaintiffs own the right, title and interest in and to each of the following twenty-five musical compositions which comprise the Composition identified herein as the "dLife Collection":

> dLife theme #1 (piano melody)
> dLife theme #1a (piano solo)
> dLife theme #1b (track only)
> Know Your Numbers
> Know Your Numbers #2
> Good Morning

Good Morning #2 (no sax)
Cruisin' Theme #1
Shuffle Theme #1
Jungle Theme #1
Hi-Hat Band #1
Hi-Hat Band #2
Hi-Hat Band #3
Hi-Hat Band #4
Disco #1
Disco #2
Disco #3
Disco #4
Hip-Hop Percussion-y
Reggae-ish
Lot's Of Danger
Lot's of Top End
In The Hip Hop House
Really Too Fancy
All Pumped Up

44.     Plaintiffs own the right, title and interest in and to each of the following fourteen

songs and musical compositions – including words and music – which comprise the Composition

identified herein as the "New Joke City":

Opening Theme w/Hip Hop
Hip Hop Groove
Theme (track, no vocal)
Vocal Button (Comedy)
Vocal Button ("Comedy") short
Vocal Button ("NJC")
Vocal Button ("t & a")
Vocal Button ("Human Waste")
Vocal Button (tits and ass)
Closing Theme
Hip Hop Guitar
Hip Hop Piano
Hip Hop Solo
Hip Hop On and On

45.     The aforementioned "dLife Collection" and "New Joke City" Collection are

hereby collectively referred to as "the Compositions."

46.    Defendants used significant portions of the aforesaid Compositions in each of the thirteen shows comprising "the Infringing Work" which were broadcast on CNBC..

47.    Upon information and belief, Defendants have used significant portions of the aforesaid Compositions in additional shows ("additional shows") beyond the aforesaid thirteen shows comprising "the Infringing Work" which were broadcast on CNBC, on DirecTV, on Colours TV, on Dish TV and on other networks.

48.    In or about 2005, Defendants produced thirteen VHS and Digital Video Disc ("DVD") Recordings of each of the thirteen shows comprising "the Infringing Work," each of which included the aforesaid Compositions.

49.    Upon information and belief, in or about 2005, Defendants produced VHS and Digital Video Disc ("DVD") Recordings of each of the additional shows comprising "the Infringing Work," each of which included the aforesaid Compositions.

**FIRST CLAIM**

50.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-50 as if fully set forth hereafter.

51.    Plaintiffs own the right, title and interest in and to each of the following twenty-five musical compositions which comprise the Composition identified herein as the "dLife Collection":

> dLife theme #1 (piano melody)
> dLife theme #1a (piano solo)
> dLife theme #1b (track only)
> Know Your Numbers
> Know Your Numbers #2
> Good Morning
> Good Morning #2 (no sax)
> Cruisin' Theme #1
> Shuffle Theme #1
> Jungle Theme #1
> Hi-Hat Band #1
> Hi-Hat Band #2

Hi-Hat Band #3
Hi-Hat Band #4
Disco #1
Disco #2
Disco #3
Disco #4
Hip-Hop Percussion-y
Reggae-ish
Lot's Of Danger
Lot's of Top End
In The Hip Hop House
Really Too Fancy
All Pumped Up

52.    Plaintiffs own the right, title and interest in and to each of the following fourteen songs and musical compositions – including words and music – which comprise the Composition identified herein as the "New Joke City":

Opening Theme w/Hip Hop
Hip Hop Groove
Theme (track, no vocal)
Vocal Button (Comedy)
Vocal Button ("Comedy") short
Vocal Button ("NJC")
Vocal Button ("t & a")
Vocal Button ("Human Waste")
Vocal Button (tits and ass)
Closing Theme
Hip Hop Guitar
Hip Hop Piano
Hip Hop Solo
Hip Hop On and On

53.    Plaintiffs are the registered owners of the copyrights of the Compositions, having filed copyright applications therefor with the United States Copyright Office.

54.    At all times relevant herein, Plaintiffs have complied with the Copyright Act, 17 USC Sec 101 et seq., and have secured the exclusive rights and privileges in and to the common law and statutory copyrights in the Compositions.

55.     Plaintiffs have not authorized, licensed, permitted or allowed any of the Defendants herein to perform, broadcast, duplicate, manufacture, reproduce, distribute or in any way use the Compositions.

56.     Defendants were at all times well aware of Plaintiffs' ownership interests in the Compositions.

57.     Upon information and belief, Defendants' acts as detailed hereinabove constitute and will constitute direct and/or contributory infringement of one or all of Plaintiffs' ownership in the Compositions in violation of 17 U.S.C. §501, et seq.

58.     Plaintiffs, as the owners of the works of authorship, have and will have the exclusive right to reproduce the Compositions and to perform, copy, manufacture and  distribute the same under 17 U.S.C. §106.

59.     Because Defendants have and continue to violate these exclusive rights of Plaintiffs by broadcasting the 13 episodes and by and selling and otherwise exploiting the DVD's and VHS recordings of the 13 episodes, Defendants have and continue to commit infringement of Plaintiffs' common law and statutory copyright under 17 U.S.C. §501.

60.     As a result of Defendants' direct and/or contributory copyright infringement, Plaintiffs have and will suffer damage.  At this time, Plaintiffs do not know the precise amount of such damages but believe them to be in excess of $500,000.00, exclusive of interest and costs. Plaintiffs also seek the statutory damages provided for in the Copyright Act.

## SECOND CLAIM

61.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-60 as if fully set forth hereafter.

62.     Based upon the foregoing information, Plaintiffs have suffered and will continue to suffer irreparable damages by reason of Defendants' copyright infringement unless Plaintiffs

re granted injunctive relief.

63.     If Plaintiffs are unable to stop the proliferation of the Infringing Work and further copyright infringement, they will suffer irreparable damages.  For this harm and damage, Plaintiffs have no adequate remedy at law.  These damages are continuing, and to a large degree will be incalculable.

64.     Pursuant to 17 U.S.C. § 502.Plaintiffs therefore request the Court to enter a preliminary injunction enjoining Defendants, their agents, servants, employees, and those acting in concert with them:

(i)     From possessing, receiving, manufacturing, licensing, assigning, offering for sale, creating derivative works from, promoting, advertising, manufacturing, distributing, performing or otherwise exploiting the Compositions and the VHS Recordings thereof and the DVD's thereof;

(ii)    From  infringing Plaintiffs' rights in and to the Compositions.

65.     Plaintiffs have no adequate remedies at law and respectfully seek the equitable intervention of the Court.

## THIRD CLAIM

66.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-65 as if fully set forth hereafter.

67.     Plaintiffs' prior counsel wrote to Defendants to advise them of their infringement and to demand that Defendants pay Plaintiffs for their use and exploitation of the Compositions within the Infringing Work yet Defendants have and continue to refuse to do so.

68.     Defendants' acts of infringement were and are being committed willfully.

69.     Plaintiffs are entitled to damages as permitted under the applicable copyright statutes 17 USC 101 et seq.  for such willful infringement.

## FOURTH CLAIM

70.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-70 as if fully set forth hereafter.

71.    Since approximately March 2005, Defendants have been broadcasting the Infringing Work to the general public on television and have been selling the Infringing Work in VHS and DVD recordings.

72.    The broadcasts and VHS and DVD recordings of the Infringing Work have and continue to confuse the general public as to the origin of the Compositions.

73.    Defendants' actions have and continue to constitute an unfair trade practice.

74.    Said unfair trade practices have and continue to damage Plaintiffs in an amount which will be determined at trial and which are estimated to be in excess of $500,000.00.

## FIFTH CLAIM

75.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-74 as if fully set forth hereafter.

76.    The United States has entered into international copyright relations with various countries of the world including doing so through the Universal Copyright Convention.

77.    Upon information and belief, the Infringing Work is being publicly broadcast in various territories outside of the United States in direct violation of Plaintiffs' International copyright.

78.    By reason thereof, Defendants infringed upon Plaintiffs' International copyright to an extent to be more fully specified following discovery of Defendants' business records.

79.    As a result of Defendants' direct and/or contributory international copyright infringement, Plaintiffs have suffered damage.  At this time, Plaintiffs do not know the precise amount of such damages but believes them to be in excess of $500,000.00, exclusive of interest and

costs.  Plaintiffs also seek the statutory damages provided for in the Copyright Act.

## SIXTH CLAIM

80.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 79 as if fully set forth herein.

81.    Defendants have violated Plaintiffs' rights under the Lanham Act, 15 USC Section 1125 and 28 U.S.C. Section 1338, by using a false designation of origin, description and representation regarding the Compositions and by palming off the Compositions as their own.

82.    As a direct result of the above, Plaintiffs have been damaged in an amount of not less than Five Hundred Thousand ($500,000.00) Dollars plus interest and demand judgment therefor.

83.    As a direct result of the above, Plaintiffs are entitled to punitive damages in the amount of not less than One Million Five Hundred Thousand ($1,500,000.00) Dollars plus interest and demand judgment therefor.

## SEVENTH CLAIM

84.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-83 as if fully set forth hereafter.

85.    Defendants Birthday Buddies, Triple Threat TV, Cohen and Sorenson are in breach of the contract with Plaintiff Stein by which Plaintiff Stein is entitled to be paid the outstanding balance of $35,000.00 plus additional funds for editing episodes of the show.

86.    Plaintiff Stein has demanded to be paid by Defendants Birthday Buddies, Triple Threat TV, Cohen and Sorenson yet said Defendants have and continue to refuse to do so.

87.    Plaintiff Stein has been damaged in an amount to be determined at trial which is not less than $35,000.00 in production fees, $3,000.00 for the use of the Compositions and additional funds in editing fees and demands judgment therefor.

## EIGHTH CLAIM

88.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-87 as if fully set forth hereafter.

89.    Defendants Birthday Buddies, Triple Threat TV, Cohen and Sorenson made a clear and unambiguous promise to Plaintiff Stein that Plaintiff Stein would be paid the entire contract amount $65,000.00.

90.    Plaintiff Stein reasonably and forseeably relied upon said promise by said Defendants, particularly by turning down other work.

91.    Plaintiff Stein has demanded to be paid by said Defendants yet said Defendants and continue to refuse to do so.

92.    Plaintiff Stein has been damaged in an amount to be determined at trial which is not less than $500,000.00 and demands judgment therefor.

## NINTH CLAIM

93.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-92 as if fully set forth hereafter.

94.    Defendants owed and continue to owe Plaintiffs a fiduciary duty.

95.    Defendants owed and continue to owe Plaintiffs an explanation as to the disposition of Plaintiffs' intellectual property, assets and money, *i.e.*, the Compositions.

96.    Defendants have come into possession and unauthorized control of Plaintiffs' intellectual property, assets and money, *i.e.*, the Compositions.

97.    Defendants have breached their fiduciary duty to Plaintiffs.

98.    Plaintiffs have demanded that Defendants account for Plaintiffs' intellectual property, assets and money, *i.e.*, the Compositions, yet Defendants have and continue to refuse to account to Plaintiffs.

99.     Plaintiffs respectfully demand an accounting as necessary to determine the respective rights of the parties.

## TENTH CLAIM

100.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 99 as if fully set forth herein.

101.     At all times relevant hereto, Defendants were aware that the Compositions were the exclusive property of Plaintiffs and that Defendants had no right, title or claim thereto.

102.     Without Plaintiffs' consent or permission, Defendants assumed and exercised the unauthorized ownership, possession, dominion and control over the Compositions.

103.     The value of the Compositions is not less than Five Hundred Thousand ($500,000.00).

104.     As a direct result thereof, Defendants have damaged Plaintiffs in an amount of not less than Five Hundred Thousand ($500,000.00) Dollars plus interest and Plaintiffs demand judgment therefor.

105.     As a direct result, Plaintiffs are entitled to treble damages in an amount of not less than One Million Five Hundred Thousand ($1,500,000.00) Dollars plus interest and demands judgment therefor.

## ELEVENTH CLAIM

106.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 105 as if fully set forth herein.

107.     Defendants have misappropriated the results, skills, expenditures and labors of Plaintiffs by using the Compositions without Plaintiffs' consent or permission and without paying Plaintiffs for the use thereof.

108.    The value of  the Compositions is not less than Five Hundred Thousand ($500,000.00).

109.    As a direct result thereof, Defendants have damaged Plaintiffs in an amount of not less than Five Hundred Thousand ($500,000.00) Dollars plus interest and Plaintiffs demand judgment therefor.

110.    As a direct result, Plaintiffs are entitled to treble damages in an amount of not less than One Million Five Hundred Thousand ($1,500,000.00) Dollars plus interest and demand judgment therefor.

## TWELFTH CLAIM

111.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 111 as if fully set forth herein.

112.    In contradiction to the NYS General Business Law Sections 392-b, 396-396-t, Defendants have falsely advertised and labeled the Compositions as their own when they are in fact the exclusive creation and property of Plaintiffs.

113.    As a direct result thereof, Defendants have damaged Plaintiffs in an amount of not less than Five Hundred Thousand ($500,000.00) Dollars plus interest and Plaintiffs demand judgment therefor.

114.    As a direct result, Plaintiffs are entitled to treble damages in an amount of not less than One Million Five Hundred Thousand ($1,500,000.00) Dollars plus interest and demand judgment therefor.

**WHEREFORE**, Plaintiffs prays for the following relief:

**First Claim:**            $500,000.00 plus interest;

**Second Claim:**           Permanent Injunction;

**Third Claim:** Statutory damages as permitted under the applicable copyright statutes 17 USC 101 et seq. for willful infringement.

**Fourth Claim:** $500,000.00 plus interest;

**Fifth Claim:** $500,000.00 plus interest;

**Sixth Claim:** $500,000.00 plus interest in compensatory damages; $1,500,000.00 plus interest in punitive damages.

**Seventh Claim:** not less than $38,000.00 plus interest;

**Eighth Claim:** $500,000.00 plus interest;

**Ninth Claim:** Accounting;

**Tenth Claim:** $500,000.00 plus interest in compensatory damages; $1,500,000.00 plus interest in punitive damages.

**Eleventh Claim:** $500,000.00 plus interest in compensatory damages; $1,500,000.00 plus interest in punitive damages.

**Twelfth Claim:** $500,000.00 plus interest in compensatory damages; $1,500,000.00 plus interest in punitive damages.

Dated: New York, New York
March 10, 2006

Yours, etc.

_____
LESLIE H. BEN-ZVI, ESQ. (LB-8639)
Attorney for Plaintiffs
233 Broadway - 18th Floor
New York, New York 10279
(212) 719-5300 / 666-6656

## **CERTIFICATION**

State of New York          )

County of New York   ) ss.:

      **ROBERT H. STEIN,** being duly sworn, deposes and says,

      1.      I am a named Plaintiff in the above-captioned matter.

      2.      I have read the foregoing Complaint and know the contents thereof.  The same is true to my own knowledge except as to those matters stated to be alleged upon information and belief and as to those matters, I believe them to be true.

      3.      The source of my knowledge and my information and belief is derived from my own knowledge of the events as well as books and records maintained by me and in my possession.


                                              _____
                                              ROBERT H. STEIN

Sworn to before me on
March 10, 2006


_____
      Notary

06-CV-_____          2006

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


ROBERT H. STEIN and TSIMMES MUSIC,

                                             Plaintiffs,

                    -against-

dLIFE, A LIFEMED MARKETING COMPANY; BIRTHDAY BUDDIES PRODUCTIONS; TRIPLE THREAT TV; HOWARD STEINBERG; GARY COHEN, ERIK SORENSON and CNBC,

                                             Defendants.


## COMPLAINT


### LESLIE H. BEN-ZVI, ESQ. _c/o_

Plaintiffs